UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHY H., *as successor of decedent* ANDREW H.,[1] )<br>)<br>*Plaintiff,*   )<br>)<br>*v.*   )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner of the   )<br>Social Security Administration,   )<br>)<br>*Defendant.*   ) | No. 1:20-cv-02721-MG-RLY |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In March 2018, Andrew H. filed for disability insurance benefits ("DIB") and supplemental social security income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of September 18, 2013. [Filing No. 15-5 at 2-12.] His applications were denied initially on July 12, 2018, [Filing No. 15-4 at 5-22], and upon reconsideration on October 19, 2018, [Filing No. 15-4 at 25-42]. Andrew H. requested a hearing, and Administrative Law Judge Carol Guyton (the "ALJ") held a hearing on August 16, 2019. At the hearing, Andrew H. amended his disability onset date from March 18, 2013 to March 1, 2018. [Filing No. 15-5 at 49.] Also at the hearing, Andrew H. withdrew his application for DIB. [Filing No. 15-2 at 17.] Thus, the ALJ's hearing and subsequent decision focused on whether Andrew H. was entitled to SSI for the period beginning March 1, 2018. [Filing No. 15-2 at 17-29.] The ALJ issued a decision on

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

October 30, 2019, concluding that Andrew H. was not entitled to receive SSI. [Filing No. 15-2 at 17-29.] The Appeals Council denied review on August 17, 2020. [Filing No. 15-2 at 2-7.]

On October 21, 2020, Andrew H. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 14.] Unfortunately, Andrew H. died on April 24, 2021, during the pendency of this appeal. [Filing No. 34.] His surviving spouse, Kathy H., was substituted as the plaintiff. [Filing No. 37.] *See* 20 C.F.R. § 404.503(b).

## I.
## STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring

instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Andrew H. was 46 years old in March 2018 when he filed his application. [Filing No. 15-2 at 27.] Andrew H. completed a high school education and had past relevant work experience as a dairy farmhand, a pipe layer, a pipe fitter, and a tree trimmer. [Filing No. 15-2 at 27.] Andrew H.'s original application alleged that he was unable to work because of heart ailments (including a valve replacement), orbital fractures, a deviated septum, panic attacks, agoraphobia, bipolar disorder, a hand deformity, a rotator cuff injury, pulmonary embolisms in his lungs, and chronic shortness of breath. [Filing No. 15-6 at 5.][2]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Andrew H. was not disabled and therefore did not qualify for benefits. [Filing No. 15-2 at 28.] Specifically, the ALJ found as follows:

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Andrew H. had not engaged in substantial gainful activity[3] since March 1, 2018, the date of his application. [Filing No. 15-2 at 20.]

- At Step Two, Andrew H. had the following severe impairments: "status-post tricuspid valve replacement, left middle finger dislocation and osteoarthritis of the right shoulder, degenerative disc disease of the cervical, thoracic, and lumbar spine, bipolar disorder, generalized anxiety disorder, agoraphobia with panic disorder, post-traumatic stress disorder (PTSD), psychotic disorder, and personality disorder." [Filing No. 15-2 at 20.]

- At Step Three, Andrew H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 15-2 at 20-23.]

- After Step Three but before Step Four, Andrew H. had the RFC "to perform light work as defined in 20 CFR 416.967(b). However, the claimant is capable of occasional climbing of ramps/stairs, balance, crawl, kneel, stoop, and crouch, but never capable of climbing ladders/ropes/scaffolds, never reaching overhead with the right upper extremity, and only frequent handling and fingering with the upper extremities. The claimant must have no exposure to hazardous machinery or unprotected heights. The claimant is capable of simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes, no interaction with the public, and only occasional interaction with co-workers and supervisors." [Filing No. 15-2 at 23.]

- At Step Four, the ALJ found that Andrew H. was unable to perform his past relevant work. [Filing No. 15-2 at 27.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Andrew H.'s age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Andrew H. could have performed, such as hand packager, small product assembler, and visual inspector checker. [Filing No. 15-2 at 28.]

## III.
### DISCUSSION

Kathy H. raises two issues on appeal, both of which concern the mental limitations adopted by the ALJ in the RFC: (1) the ALJ failed to properly consider the limitations in opinions offered

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

by two state agency reviewing psychologists; and (2) the ALJ failed to include appropriate limitations in the RFC for Andrew H.'s moderate limitation in concentration, persistence or pace.

### A. State Agency Psychologists

#### 1. Background

The ALJ found "persuasive" the opinions of state agency psychologists Ken Lovko, Ph.D. and Donna Unversaw, Ph.D., who each assessed Andrew H.'s mental RFC and found that he was not disabled. [Filing No. 15-2 at 26 (ALJ decision); Filing No. 15-3 at 7-12 (Dr. Lovko); Filing No. 15-3 at 36-42 (Dr. Unversaw).] As relevant to this appeal, the state agency psychologists' opinions concerning Andrew H.'s mental RFC are comprised of two sections: (1) the so-called "checkbox" section in which the psychologists answer a series of questions about whether Andrew H. is not limited, moderately limited, or extremely limited as to certain functionalities; and (2) a "narrative" section in which the psychologists translate the checkbox limitations into functional limitations.

Relevant on appeal, in response to checkbox questions, Dr. Lovko and Dr. Unversaw opined that Andrew H. was "moderately limited" in the following four categories:

- "The ability to maintain attention and concentration for extended periods."
- "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."
- "The ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness."
- "The ability to respond appropriately to changes in the work setting."

[Filing No. 15-3 at 39-40.] In the narrative section, Dr. Lovko opined as follows:

> The totality of evidence in file suggests that claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief

6

supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting.

[Filing No. 15-3 at 13.] On reconsideration, Dr. Unversaw agreed with Dr. Lovko's opinion and added that "[t]here is a [history] of [drug abuse] including meth which can result in AH [auditory hallucinations]. He is not found to be reliable in his reporting of current/recent [drug abuse] as objective data find more recent use than he acknowledges" and further noted that records show that he is non-compliant with mental health treatment. [Filing No. 15-3 at 41.]

The ALJ found Dr. Lovko and Dr. Unversaw's opinions to be "persuasive." [Filing No. 15-2 at 26.] In particular, the ALJ cited Dr. Lovko's narrative opinion that Andrew H. was "able to understand, carry out, and remember simple instructions, make judgments commensurate with functions of simple repetitive tasks, respond appropriately to brief supervision and interactions with co-workers and work situations, and deal with changes in routine work setting." [Filing No. 15-2 at 26.] The ALJ found that the doctors' opinions were "generally consistent with the record, which shows the claimant exhibits some signs/symptoms of functional impairment, but not to the degree alleged." [Filing No. 15-2 at 26.] The ALJ thus adopted the following mental limitations in the RFC: "The claimant is capable of simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes, no interaction with the public and only occasional interaction with co-workers and supervisors." [Filing No. 15-2 at 23.]

During the hearing, the ALJ posed the RFC adopted in her written opinion as a hypothetical to the VE. [Filing No. 15-2 at 64-65 ("And this person has mental limitations. They consist of simple, routine tasks involving no more than simple short instructions, and simple work-related -- simple work-related decisions with few workplace changes. There can be no interaction with the general public, and only occasional interaction with coworkers and supervisors.").] The VE

testified that there was work available for such an individual (in combination with certain physical and educational limitations) in the national economy. [Filing No. 15-2 at 65-66.] The ALJ then asked the VE the hypothetical with an additional limitation for time off task: "And this person may need unscheduled breaks throughout the day that would cause them to be off task, let's say, 20 percent of the workday, would the (sic) be jobs that this person could do?" [Filing No. 15-2 at 66.] The VE responded that "[t]here would be no competitive full-time employment." [Filing No. 15-2 at 66.]

### 2. The Parties' Positions

Kathy H. argues that "the ALJ committed reversible error when [the ALJ] failed to confront, let alone provide any logical explanation[,] for her implicit dismissal of two state agency reviewing psychologists' potentially disabling opinions" that Andrew H. had "moderate limitations" with respect to his abilities to: (1) "maintain attention and concentration for extended periods"; (2) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (3) "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness"; and (4) "respond to changes in the work setting." [Filing No. 27 at 11.] Kathy H.'s contention is that the RFC adopted by the ALJ should have included additional restrictions to account for these checkbox moderate limitations, or, the ALJ should have "confront[ed] these opined limitations" because they were more restrictive than the RFC ultimately adopted by the ALJ. [Filing No. 27 at 12.] More specifically, Kathy H. says that these checkbox responses suggest that "Plaintiff's psychological impairments would result in slowed work pace, lapses in concentration, additional breaks, exhibitions of socially inappropriate behaviors, and even absences from work." [Filing No. 27 at 15.] Kathy H. argues that the ALJ had an obligation

to confront contradictory evidence, even though the ALJ purported to adopt the limitations contained in the state psychologists' opinions. [Filing No. 27 at 12-13.] She also argues that the ALJ failed to account for a statement in state agency psychologists' narrative mental RFC for Andrew H. that Andrew H. was "able to respond appropriately to brief supervision and interactions with coworkers and work situations." [Filing No. 27 at 11.] She contends the restriction adopted by the ALJ that Andrew H. be limited to "no interaction with the public and only occasional interaction with co-workers and supervisors" is contrary to the psychologists' findings that Andrew H. is capable of "brief supervision and interactions." [Filing No. 27 at 13.]

The Commissioner responds that substantial evidence supports the ALJ's mental RFC finding. [Filing No. 29 at 7.] First, the Commissioner cites the ALJ's reliance on medical evidence regarding Andrew H.'s failure to pursue mental health treatment and non-compliance. [Filing No. 29 at 7 (noting that the ALJ "cited to [Andrew H.'s] repeated failure to attend scheduled appointments with his case manager and psychiatrist in 2018" and "his case manager's observation that [Andrew H.] did not seem to want to 'work on anything' in terms of mental health treatment").] The Commissioner also points out that the ALJ referenced Andrew H.'s medical records that found his mental faculties and judgment to generally be intact and that his frequent visits to emergency rooms, undermining his claims that he was unable to interact with the public. [Filing No. 29 at 7-8.] Second, the Commissioner argues that the ALJ's reliance on the narratives provided by the state agency psychologists in developing Andrew H.'s mental RFC was appropriate because the narratives "'adequately encapsulated and translated' the moderate limitations into functional restrictions." [Filing No. 29 at 10 (quoting *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).] Thus, the Commissioner argues, there are no inconsistencies between the RFC adopted by the ALJ and the opinions of the state agency psychologists. [Filing No. 29 at 9-10.] The Commissioner

9

further contends that Kathy H. is "wrongly equat[ing] 'moderate limitation' with the inability to function satisfactorily in a job setting," when, under SSA rules, "a 'moderate limitation' means that functioning in that area is 'fair.'" [Filing No. 29 at 11 (citing 20 C.F.R. Pt. 404, Subpt. P. App'x 1 § 12.00(F)(2)(c)).] The Commissioner says that "[a] person is 'seriously limited' or 'not able to function' on a sustained basis *only* if found to be markedly or extremely limited." [Filing No. 29 at 11.] The Commissioner also argues that social limitations described in the ALJ's RFC regarding interactions with supervisors and co-workers (that Andrew H. could "occasionally" interact with them)ares not more restrictive than the state agency psychologists' finding that Andrew H. could "respond appropriately to brief supervision and interactions with co-workers." [Filing No. 29 at 12-13.]

In reply, Kathy H. argues that the Commissioner is falsely contending that a moderate limitation "actually equates to no limitation at all." [Filing No. 33 at 2.] She also argues that the narratives from the psychologists are inconsistent with the checkbox answer in terms of Andrew H.'s ability to work uninterrupted for eight hours, and therefore the ALJ could not rely on the narratives to develop the RFC. [Filing No. 33 at 3.] She argues that "the reviewing psychologists opined a checkbox limitation suggestive of the notion [Andrew H.] would experience some time off task" and thus "[t]he ALJ was required to actually assess such a limitation as part of the [RFC] … or provide 'good explanation' for electing not do so." [Filing No. 33 at 4.] As for the social limitations, Kathy H. reasserts her position that an allowance for "brief" interactions is more restrictive than "occasional" interactions. [Filing No. 33 at 4-5.]

### 3. Analysis

In making a proper RFC determination, the ALJ must consider all relevant evidence in the record, even as to limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir.

2014). From the evidence in the record, the ALJ must build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The Seventh Circuit has explained that when posing hypotheticals to a VE, an ALJ must explicitly account for all limitations supported by the medical evidence, unless the VE has independently reviewed the medical record. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018).

The Seventh Circuit has had occasion to address checkbox limitations and narrative explanations. In *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), a state agency consultant had opined in the checkbox questions that the claimant was moderately limited in six areas, but in his accompanying narrative, the consultant simply stated that the claimant retained the capacity for unskilled work. *Id.* at 857-58. The Seventh Circuit held that it was error for the ALJ to simply rely on the narrative and not account for the moderate checkbox limitations because the narrative did not adequately capture the checkbox limitations. *Id.* at 858-59. In *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), the Circuit held that the checkbox "[w]orksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes where that narrative adequately encapsulates and translates those worksheet observations." *Id.* at 816. More recently, in *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019), the Circuit held that while an "ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in checkbox sections." *Id.* at 676. In sum, "[e]ven if a medical source provides a narrative explanation and the ALJ relies on that explanation, the ALJ must still include other checkbox limitations in the [RFC] and hypotheticals" to the extent they are inconsistent with the

narrative. *Spry v. Kijakazi*, 2022 WL 101335, at *3 (N.D. Ind. Jan. 11, 2022) (citing *DeCamp*, 916 F.3d at 676).

Here, Dr. Lovko and Dr. Unversaw's checkbox limitation specifically indicated that Andrew H. was moderately limited in completing a workday or workweek without psychologically based symptoms and in working at a consistent pace without an unreasonable number and length of rest periods. While the RFC adopted by the ALJ addresses some limitation in the area of concentration, the ALJ did not account for the moderate time-off-task limitations reflected in the checkbox. Furthermore, the ALJ appeared to recognize that Andrew H.'s impairments may pose some time-off-task limitations when the ALJ posed a time off task hypothetical to the VE, but then failed to discuss her time-off-task finding in her decision. "While an ALJ is not bound to any hypothetical, it is clear here the ALJ considered the issue of off-task time, but then failed to provide any analysis of whether … [claimant] was limited by any off-task allowances and, if so, for how long." *Jacob D. v. Kijakazi*, 2021 WL 3674610, at *5 (N.D. Ill. Aug. 19, 2021). The undersigned cannot consider this error harmless when the VE testified that Andrew H. would be unemployable were she to be off task 20% of the time.

The Commissioner's citation to the ALJ's consideration of the medical evidence does not salvage this error. As noted above, the ALJ could have articulated why she did not find a time-off-task limitation was appropriate with citation to medical evidence (and she may well have good reasons for not including this limitation), but the ALJ did not do so. Nor does the Commissioner's citation to *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021) salvage the ALJ's decision. In *Pavlicek*, the Seventh Circuit held that an ALJ may reasonably rely on a state agency consultant's narrative "when it is in fact consistent with" the consultant's "checklist ratings." *Id.* at 783. The Court found that "a moderate limitation in performing at a consistent pace" in the checkbox rating was

consistent with the narrative opinion that the claimant had "the ability to perform simple, repetitive tasks at a consistent pace." *Id.* The problem here is that the state psychologists' narratives are inconsistent with the checkbox moderate limitation for time off task because the narrative makes no mention of any limitations that area.

Therefore, remand is appropriate so that the ALJ can reconsider Dr. Lovko and Dr. Unversaw's checkbox limitations regarding time off task. On remand, the ALJ should also consider whether other checkbox limitations are consistent with the state agency consultants' narratives and if inconsistent, either include the limitations in the RFC and hypotheticals or explain the reasoning for excluding the checkbox limitations.

### B. Other Issues

The Court need not resolve other issues raised by Kathy H. regarding the RFC adopted by the ALJ because the issues discussed above are dispositive.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Andrew H. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/22/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**